UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER FOR
SUPERIOR BANK,

    Plaintiff,

vs.

Case No.: 8:14-cv-834-T-24TGW

GEORGE J. HALL, STANLEY BAILEY,
C. MARVIN SCOTT, RICK D. GARDNER,
JOHN FIGLEWSKI, KENNETH POMEROY,
SHANNON MADDOX, RICK HALLORAN,
JAMES M. KENT, JR., PETER L. LOWE,
ROBERT T. PARRISH, JR., AND
D. DEWEY MITCHELL,

    Defendants.
_____/

**ORDER**

This matter comes before the Court on George J. Hall, C. Stanley Bailey, C. Marvin Scott, Rick D. Gardner, John Figlewski, Kenneth Pomeroy, Shannon Maddox, and Rick Halloran's (the "Officer Defendants") Motion to Dismiss the Complaint and Motion for a More Definite Statement (Dkt. 25) and on James M. Kent, Jr., Peter L. Lowe, Robert R. Parrish, Jr., and D. Dewey Mitchell's (the "Director Defendants") Motion to Dismiss the Complaint and Defendant Kent's Motion to Dismiss the Complaint for Lack of Personal Jurisdiction (Dkt. 32). Plaintiff Federal Deposit Insurance Corporation As Receiver For Superior Bank ("FDIC") has filed a response in opposition to both motions (Dkts. 38, 42). With the Court's permission, the Officer Defendants and the Director Defendants filed replies (Dkts. 44, 49).

For the reasons stated herein, the motions to dismiss are denied.

I.      BACKGROUND

The FDIC as receiver for Superior Bank brings suit against former officers (the Officer Defendants) and directors (the Director Defendants) of Superior Bank. According to the Complaint, Superior Bank first opened in 1957 as Warrior Savings Bank. It later changed its name to "The Bank" in 1998 and then to Superior Bank in 2006. Superior Bank moved its headquarters to Tampa, Florida in 2009.[1]

In 2005, Defendants implemented an aggressive growth strategy focused on high-risk lending in Florida. Specifically, Superior expanded its commercial real estate ("CRE") lending and its acquisition, development, and construction ("ADC") lending in Florida. Between 2007 and 2010, Superior's CRE portfolio increased from 342 percent to 662 percent.

Also between 2007 and 2010, Defendants approved fourteen loans for various construction and real estate projects in Florida (the "Subject Transactions"). The specific loans at issue were approved by various Officer and Director Defendants (not all Defendants approved all of the Subject Transactions). The FDIC alleges that Defendants' approval of the Subject Transactions violated Superior Bank's Loan Policy, which they had a duty to adhere to, and thus Defendants "turned a blind eye" to known risks associated with CRE and ADC loans by approving multi-million dollar loans in violation of the Loan Policy.

The Loan Policy, among other things, required complete financial information from applicants and the submission of a complete loan package prior to loan approval; joint and several guarantees by the owners and partners; written appraisals for transactions over $250,000; certain maximum loan to value (LTV) and loan to cost (LTC) ratios for construction loans; and an equity

---

[1] The Complaint does not allege where Superior Bank was headquartered before moving to Tampa, Florida in 2009. The Defendants dispute the factual allegations related to Superior's headquarters and whether those headquarters moved to Tampa, Florida in 2009 or at all.

contribution by the borrower before the loan funding. The Loan Policy required that "land loans will be extended to financially strong loan customers with verifiable liquidity." Dkt. 1 at 7. Loans to insiders of the bank were more strictly regulated under the Loan Policy. Finally, the Loan Policy discouraged certain types of loans, such as loans for the purchase of raw land with no plans to develop such land, loans for 100 percent financing, and non-recourse loans.

The FDIC alleges that although Defendants were required to adhere to the Loan Policy, they regularly approved loans without requiring equity contributions, the loans were based on incomplete and old financial information, the borrowers were overextended, and Defendants failed to obtain valid and current appraisals.

On April 15, 2011, the Office of Thrift Supervision closed Superior Bank and appointed the FDIC as Receiver for the bank. The FDIC initiated this litigation on April 9, 2014. (Dkt. 1). The FDIC brings three claims against Defendants: Count I for negligence against the Officer Defendants, Count II for Gross Negligence under 12 U.S.C. § 1821(k) against all Defendants, and Count III for breach of fiduciary duty against all Defendants. The claims are based on allegations that the Officer and Director Defendants were negligent and/or grossly negligent for approving the fourteen Subject Transactions. For the same reasons, the FDIC alleges that Defendants breached their fiduciary duties of loyalty to Superior Bank, its shareholders, account holders, and depositors. The FDIC alleges that the actions of Defendants resulted in at least $44 million in damages to Superior Bank.

## II.     STANDARD OF REVIEW

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court is required to view the complaint in the light most favorable to the plaintiff. *See Murphy v. Federal Deposit Ins. Corp.*, 208 F.3d 959, 962 (11th Cir. 2000) (citing *Kirby v. Siegelman*, 195 F.3d 1285,

1289 (11th Cir. 1999)). The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. Instead, Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (citation omitted).

As such, a plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965 (citation omitted). While the Court must assume that all of the allegations in the complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right to relief above the speculative level." *Id.* (citation omitted). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. *Jackam v. Hospital Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986).

### III. APPLICABLE LAW

In their motions to dismiss, Defendants argue that Superior Bank was a federally insured financial institution based in Birmingham, Alabama until its closure in April 2011. Defendants assert that the FDIC does not accurately allege that Superior Bank's headquarters and executive offices were in Birmingham, Alabama, nor does the FDIC allege that the headquarters and executive offices were in Birmingham at the time Defendants approved the Subject Transactions. Defendants attach various SEC filings and annual reports in support of their assertion that Superior Bank was headquartered in Alabama. Defendants argue that because Superior Bank was headquartered in Alabama and had its principal place of business in that state, Alabama substantive law applies to the FDIC's claims. In addition, Defendants argue that the Alabama statute of

limitations along with the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") apply in this case. Dkt. 25 at 2; Dkt. 32 at 2. According to the FDIC, based on the minimal allegations in the Complaint related to Superior Bank's headquarters and its banking locations, in addition to the place where the relevant events took place, Florida law applies to this case. Dkts. 38, 42. However, the FDIC supports this notion by relying on Florida's Most Significant Relationship Test, which requires significant factual development and evidence before the Court may make a choice of law determination. *See* Dkt. 38 at 23-26.

### A. Motions to Dismiss Counts I, II and III as Time-Barred

Defendants assert that Alabama law applies to this case and that under the Alabama statute of limitations, the claims against Defendants are time-barred. They argue that claims for negligence and breach of fiduciary duty must be brought within two years of the date they accrue and that the claims accrued at the time Superior Bank approved the loans in question. The FDIC argues that Florida law and Florida's statute of limitations apply but that the claims are timely under either Alabama or Florida law because the claims' statute of limitations runs from the time the loans were defaulted and not from the time the loans were approved.

The factual allegations of the Complaint must be taken as true for purposes of a motion to dismiss. The Complaint alleges that in 2009, Superior Bank moved its headquarters to Tampa Florida and had several banking locations in and around Tampa, Florida. Further, the loans in question were on Florida properties. However, the Complaint appears to omit certain jurisdictional facts, which may be relevant to the choice of law determination. For example, Defendants assert that Superior Bank was headquartered in Birmingham, Alabama for over fifty years, including the time period relevant to this case and attach SEC filings from various years that list the bank's headquarters as located in Birmingham. The Complaint does not allege where the bank was

5

originally headquartered, where Defendants and other senior management worked, where the loans were approved, the location of the bank's headquarters and/or principal place of business at the time the loans were approved, or the locations of Superior Bank's branches.  At this time, it is clear that the parties disagree on material facts that drive the choice of law analysis, specifically where Superior Bank was originally headquartered, and if and when that headquarters may have moved to Tampa, Florida.

While it is proper to grant a Rule 12(b)(6) motion if noncompliance with the statute of limitations is apparent on the face of the complaint (*LaGrasta v. First Union Securities, Inc.*, 358 F.3d 840, 845-46 (11th Cir. 2004)), that is not the case here. *See, e.g., Williams v. Savage*, 538 F. Supp. 2d 34, 39 (D.D.C. 2008) ("Because statute of limitations issues often depend on contested questions of fact, however, the court should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint.").  Here, because noncompliance with the statute of limitations is not apparent from the Complaint, "[i]t would be premature to dismiss the complaint because the applicable statute of limitations has run." *Omar ex rel. Cannon v. Lindsey*, 243 F. Supp. 2d 1339, 1346 (M.D. Fla.), *aff'd*, 334 F.3d 1246 (11th Cir. 2003) (finding that where both parties set forth fact-intensive reasons as to why the motion to dismiss on the basis of the statute of limitations should be granted or denied, it was premature to dismiss the complaint on that basis).  In this case, the parties have asserted fact-intensive reasons as to why the motions to dismiss on the basis of the statute of limitations should be granted or denied.  Thus, the Court concludes that the statute of limitations issue cannot be resolved at this stage in the litigation when the applicable law cannot yet be decided without additional facts. Defendants' motions to dismiss based on the running of the statute of limitations are denied.

### B.     Motions to Dismiss Count III for Failure to State a Claim

Both the Officer and Director Defendants move to dismiss Count III for breach of fiduciary duty for failure to state a claim. The Complaint alleges that Defendants are jointly and severally liable for the damages caused by the breaches of their fiduciary duty. Dkt. 1, ¶ 127. The Officer Defendants do not dispute that the allegations in the Complaint that identify the defendants involved in a specific loan transaction are sufficient to state a claim for breach of fiduciary duty against those individual defendants as to that specific loan transaction. Dkt. 25 at 22-23. However, the Officer and Director Defendants assert that to the extent Count III seeks to impose liability against any Defendant for any of the Subject Transactions in which he was not involved, the count fails to state a claim for breach of fiduciary duty against that Defendant. Dkt. 25 at 23; Dkt. 32 at 21-22. Defendants contend that the FDIC's theory of joint and several liability fails under both Alabama and Florida law.

Because the Court has not determined the applicable law in this case, the FDIC's claim for breach of fiduciary duty will be analyzed under both Florida and Alabama law. In Florida, in order to state a claim for breach of fiduciary duty, a plaintiff must allege "the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). For corporate directors and officers, it is established that they "owe a fiduciary obligation to the corporation and its shareholders and must act in good faith and in the best interests of the corporation." *Cohen v. Hattaway*, 595 So. 2d 105, 107 (Fla. 5th DCA 1992). Under Alabama law, to state a claim for breach of fiduciary duty, one must allege: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damages suffered as a result of the breach. *Regions Bank v. Lowrey*, 101 So. 3d 210, 219 (Ala. 2012). The

7

Complaint, as acknowledged by the Officer Defendants, states a claim for breach of fiduciary duty against certain Defendants under both Florida and Alabama law.

Defendants, however, move to dismiss based on the assertion of joint and several liability as to all Defendants for alleged breaches of their fiduciary duty.  The Officer and Director Defendants owed a fiduciary duty to Superior Bank, which duty extends to the corporation as a whole, including its shareholders, account holders, and depositors.  Although Florida has abolished joint and several liability in negligence actions, it has not done so with respect to intentional torts.[2] *See* § 768.81, Fla. Stat.; *Hawley v. American Eagle Sailing, Inc.*, No. 3:06-cv-986-J-33TEM, WL 2007 3012133, at *1 (M.D. Fla. Oct. 12, 2007) (stating that "[u]nder Florida law, the doctrine of joint and several liability applies in actions based upon intentional torts").  Joint and several liability among multiple tortfeasors exists when the tortfeasors, acting in concert or through independent acts, produce a single injury.  *Id.* (quoting *Acadia Partners, L.P. v. Tompkins*, 759 So. 2d 732, 736 (Fla. 5th DCA 2000)).  *See also* § 875 Restatement (Second) of Torts (1979) (setting forth the principle of joint and several liability).

Similarly, under Alabama law, "joint tortfeasors are those who act together in committing wrong, or whose acts if independent of each other, unite in causing a single injury."  *Ex parte Barnett*, 978 So. 2d 729, 733 (Ala. 2007) (quotations omitted).  "If damage results from concurrent, wrongful acts of two or more tortfeasors, they may be sued jointly and severally and the act of each may be counted on as the proximate cause of the injury."  *Id.* (quoting *Butler v. Olshan*, 191 So. 2d 7, 17 (Ala. 1966)).

---

[2] Breach of fiduciary duty is an intentional tort in Florida.  *See Mehlenbacher ex rel. Asconi Corp. v. Jitaru*, No. 6:04-cv-118-Orl-22KRS, 2005 WL 4585859, at *12 (M. D. Fla. June 6, 2005); *Davis v. Monahan*, 832 So. 2d 708, 711 (Fla. 2002) (referring to "the intentional tort of breach of fiduciary duty").

8

Under both Florida and Alabama law, Defendants may be held jointly and severally liable for the amount of damages proven by the FDIC. Therefore, Defendants' motions to dismiss to the extent the Complaint seeks to impose liability for breach of fiduciary duty on any non-voting Defendant are denied.

### C.      Kent's Motion to Dismiss for Lack of Personal Jurisdiction

The Complaint includes claims against Defendant Kent for gross negligence (Count II) and breach of fiduciary duty (Count III). The FDIC alleges that Kent served as a director of Superior Bank from 1998 until it closed in 2011. He was also a member of the Board Loan and Investment Committee (BLIC) from March 2006 until at least January 2011. According to the Complaint, the Court has personal jurisdiction over Defendants, including Kent, because they conducted business in Florida, including approving loans for the acquisition and development of property in the state, personal visits to Superior Bank's headquarters in Tampa, Florida, communications with executives of the bank in Tampa and in Florida, and management of Superior Bank's twenty-eight banking locations in Florida. Dkt. 1 ¶ 23. At issue in this case are fourteen Subject Transactions, which are loans and financing for various real estate, construction, and development projects in Florida. According to the Complaint, Defendants pursued an aggressive growth strategy focused on high-risk real estate lending in Florida. Of the fourteen Subject Transactions, Kent is alleged to have approved the following loans:

| Subject Transaction | Date of Approval | Location of Project |
|---|---|---|
| First Family Florida Trust | August 4, 2008 | Panama City, Florida |
| Breakers Properties, LLC | July 21, 2008 | Panama City Beach, Florida |
| K.E.D., H.H.P. and C.W.R., III | July 21, 2008 | Panama City Beach, Florida |
| Metropolitan 8-12, LLC | July 24, 2007 | Tallahassee, Florida |

Kent argues that the Court lacks personal jurisdiction over him and seeks to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(2).

9

In order to determine whether a court may properly exercise personal jurisdiction over a non-resident defendant, courts follow a two-step analysis. *Schulptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996). First, the court determines whether the Florida long-arm statute provides a basis for personal jurisdiction. If so, the court must determine whether sufficient minimum contacts exist between the defendant and the forum state so as to satisfy traditional notions of fair play and substantial justice under the Due Process Clause of the Fourteenth Amendment. *Id.* (citations omitted).

"When a district court does not conduct a discretionary evidentiary hearing on a motion to dismiss for lack of jurisdiction, the plaintiff must establish a prima facie case of personal jurisdiction over a nonresident defendant. A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (citation omitted).

"The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Id.* (citation omitted). Once the plaintiff pleads sufficient facts to support the exercise of personal jurisdiction, the burden shifts to the defendant to challenge the plaintiff's allegations by affidavits or other competent evidence. *See Mold-ex, Inc. v. Michigan Technical Representatives, Inc.*, 2005 WL 2416824, at *2 (N.D. Fla. Sept. 30, 2005) (citations omitted). If the defendant sustains its burden, the plaintiff is required to substantiate the allegations in the complaint by affidavits or other competent evidence. *See id.* (citations omitted); *Coastal Builders, Inc. v. Ficon Fabricators, Inc.*, 2005 WL 1005135, at *2 (S.D. Ala. April 29, 2005) (citation omitted); *Kozial v. Bombardier-Rotax GMBH*, 129 Fed Appx. 543, 545 (11th Cir. 2005) (citations omitted). If the plaintiff substantiates the allegations in the complaint by affidavits or other competent evidence, the plaintiff's evidence is to be credited, even

if it conflicts with the defendant's evidence. *See Coastal Builders*, 2005 WL 1005135, at * 2 (citations omitted).

In his affidavit contesting personal jurisdiction, Kent states that he has been an Alabama resident his entire life. In 1996, Kent became a director for Warring Savings Bank (which later became The Bank and, in 2006, changed its name to Superior Bank). In addition to serving as a director for Superior Bank, Kent was a member of the bank's Board Loan and Investment Committee (BLIC). In his positions at Superior Bank, Kent participated in meetings, nearly all of which took place in Alabama. Kent attended two meetings in Florida—one in 2006 and one in 2007—in his capacity as director and/or BLIC member. Kent has not otherwise traveled to Florida for work. He does not presently own any property in Florida, although he did previously own property in the state. Kent has traveled to Florida for family vacations. (Dkt. 32, Ex. 5).

In its Response, the FDIC submits the declaration of Patrick S. Richard which states that Defendants pursued an aggressive growth strategy in Florida beginning in 2006, including moving its headquarters to Tampa, Florida in 2009 (while Kent was a director) and operating twenty-eight banking locations in the state. (Dkt. 42-1). Kent approved a board resolution that authorized Superior Bank's home office designation be changed from Alabama to Tampa, Florida. Attached to the declaration of Richard is a portion of a deposition Defendant George Hall in which Mr. Hall testified that the bank's headquarters moved to Tampa, Florida in 2009. (Dkt. 42, Ex. B). According to Richard's declaration and the attached 2006 Strategic Plan of Superior Bancorp, Defendants, including Kent, approved loans and financing for various Florida real estate and construction projects at a time when they knew the Florida market was risky and at the beginning of an economic downturn. (Dkt. 42, Ex. A). Kent approved four of the Subject Transactions, all of which involved projects located in Florida. Kent approved a $12.5 million loan to insiders of

11

Superior Bank, which violated the Loan Policy for numerous reasons. (Dkt. 42-1 at 3-4, Ex. H, I). The terms of the loan required payments to be made in Panama City, Florida. (Dkt. 42-1 at 4-5). Defendants' (including Kent's) failure to follow the bank's Loan Policy and the ensuing reckless lending led to a large increase in classified assets (loans for which payments were not timely) through 2010 and the eventual closure of Superior Bank on April 15, 2011.

Kent's affidavit conflicts with the Complaint and the FDIC's evidence—specifically the declaration of Richard, the deposition of George Hall, the 2006 Strategic Plan of Superior Bancorp, and the loan documents for the Breakers Loan approved by Kent—submitted in response to the affidavit. The FDIC's evidence is to be credited. *See Coastal Builders*, 2005 WL 1005135, at * 2 (citations omitted).

In its response to Kent's motion to dismiss, the FDIC argues that the Court has specific jurisdiction over Kent under the tortious act provision of the Florida long-arm statute, section 48.193, Florida Statutes. Under that provision, a person is subject to the jurisdiction of the court if he commits a tortious act within the state. § 48.193(1)(a)(2), Fla. Stat. The alleged tortfeasor's physical presence in Florida is not required. *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1168 (11th Cir. 2005) (citing *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002)). Jurisdiction may be found where an out-of-state defendant commits a tort that produces an injury in Florida. *Id.* Breach of fiduciary duty is an intentional tort in Florida. The FDIC's Complaint includes a count against Kent for breach of fiduciary duty that allegedly caused injury in Florida.

Here, Kent's approval of the loans may have taken place outside of Florida, but the loan default caused injury in Florida. Thus, the tortious act provision of Florida's long-arm statute applies to Kent's conduct. *See, e.g., Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1216 (11th Cir.

1999) (extending jurisdiction over a nonresident defendant whose tortious act committed outside of the state allegedly caused injury in Florida). The FDIC's allegations, if true, are sufficient to support the claim that Kent breached his fiduciary duties by approving certain Subject Transactions, which resulting loan defaults caused injury to Superior Bank in Florida. The Court finds that the tortious act provision of Florida's long-arm statute applies to extend the Court's personal jurisdiction over Kent with respect to the breach of fiduciary duty claim.

The second part of the jurisdictional analysis is whether the exercise of personal jurisdiction over Kent comports with due process. *Posner*, 178 F.3d at 1220. Subjecting Kent to jurisdiction in Florida comports with due process so long as "minimum contacts" exist between Kent and Florida and exercising jurisdiction does not offend "traditional notions of fair play and substantial justice." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 258 (11th Cir. 1996).

Minimum contacts involve three criteria: First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws. Third, the defendant's contacts within the forum state must be such that he should reasonably anticipate being haled into court there. *Sculptchair*, 94 F.3d at 631 (citation omitted). The Court finds that Kent had sufficient minimum contacts with the state of Florida to justify haling Kent into court in Florida.

There can be no dispute that Kent's actions in approving certain of the Subject Transactions are intimately connected to the FDIC's causes of action. It is also apparent that Kent conducted business in Florida by his involvement in approving the Subject Transactions for Florida projects, and serving as a director when Superior Bank pursued its growth strategy into Florida and moved its home office to Tampa, Florida. The *Mehlenbacher* case is instructive. *Mehlenbacher ex rel.*

*Asconi Corp. v. Jitaru*, No. 6:04-cv-118-Orl-22KRS, 2005 WL 4585859 (M. D. Fla. June 6, 2005). In *Mehlenbacher*, which was a shareholder derivative action, the defendants included the Chief Executive Officer, who was also a board member, and other directors of the corporation. Some of the directors moved to dismiss for lack of personal jurisdiction. As to director Bujoreanu, the court found that he was subject to personal jurisdiction in Florida for the following reasons:

> [Bujoreanu] is accused of intentional wrongdoing directed at a corporation headquartered in Florida, which injured that company in Florida. Further, Bujoreanu is no ordinary (alleged) third-party tortfeasor. He is a corporate director and audit committee member of a Florida-based company. Based on 'common sense and everyday experience,' these are significant positions customarily associated with a company's governance. Further, these positions are voluntarily assumed and held; it was Bujoreanu's choice to accept leadership positions in a corporation headquartered in this state. Hence, Bujoreanu's contacts with Florida are not random, fortuitous or attenuated; he can hardly claim surprise at being haled into a Florida court to answer to the kind of allegations levied against him in the Amended Complaint.

*Id*., at *14.

The same can be said of Kent in this case. Kent served on the Board and the BLIC for years, regularly attending board meetings. In his position, Kent approved loans for projects in Florida. During his time on the Board and the BLIC, Superior Bank adopted an aggressive growth strategy aimed at the Florida real estate market and, at some point during Kent's tenure, the bank moved its headquarters to Tampa, Florida. The Court concludes that Kent's actions were not so random, fortuitous or attenuated that he could not have reasonably anticipated being haled into court in Florida. Kent has purposefully directed his activities at the forum state sufficient to establish minimum contacts.

Further, the exercise of personal jurisdiction over Kent comports with fair play and substantial justice. *Sculptchair*, 94 F.3d at 631. Notably, Kent, an Alabama resident, does not contend that defending this lawsuit in Tampa, Florida would place an undue burden on him. The

Subject Transactions all involved projects in Florida, and Florida is alleged to be the place of injury in this case. Florida has a strong interest in adjudicating this matter since it is alleged that Defendants' intentional misconduct caused injury in the state. Thus, the Court finds that the exercise of personal jurisdiction over Kent comports with the notions of fair play and substantial justice.

Finally, because the Court has personal jurisdiction over Kent with respect to the breach of fiduciary duty claim, there is personal jurisdiction over Kent with respect to the gross negligence claim (Count II) because the claims arose from the same jurisdiction-generating events. *Thomas v. Brown*, 504 Fed. Appx. 845, 847 (11th Cir. 2013). Kent's motion to dismiss the Complaint for lack of personal jurisdiction is denied.

### D. Motion for More Definite Statement

Pursuant to Federal Rule of Civil Procedure 12(e), Defendants seek to have the FDIC provide a more definite statement with respect to Count III in order to identify the Subject Transaction for which each Defendant is liable. The Officer Defendants also appear to ask for a more definite statement on Counts I and II as well.

A motion for more definite statement is appropriate if a pleading "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed. R. Civ. P. 12(e). In considering such a motion, the Court is mindful that the Rule 8(a) standard for sufficiency of a complaint is low. *Quality Foods de Centro America v. Latin American Agribusiness Dev't Corp.*, 711 F.2d 989, 995 (11th Cir. 1983). Under Federal Rule Civil Procedure 8, the complaint is sufficient if it is a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

Here, the Court finds that the Complaint adequately informs each and every Defendant of the period during which the challenged loans were made, and of the conduct alleged to be tortious. The claims based on that alleged conduct are sufficient to survive a motion to dismiss. Thus, the motions for a more definite statement are denied.

### E. Conclusion

For the reasons explained above, it is **ORDERED AND ADJUDGED** that the Officer Defendants' Motion to Dismiss Counts I, II, and III for Failure to State a Claim to the extent the claims are time barred is **DENIED**; the Officer Defendants' Motion to Dismiss Count III for failure to state claim is **DENIED**; the Officer Defendants' Motion for a More Definite Statement is **DENIED**; the Director Defendants' Motion to Dismiss Counts I, II, and III for Failure to State a Claim to the extent the claims are time barred is **DENIED**; the Director Defendants' Motion to Dismiss Count III for failure to state claim is **DENIED**; Kent's motion to dismiss for lack of personal jurisdiction is **DENIED**; and the Director Defendants' Motion for a More Definite Statement is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 9th day of December, 2014.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record

16